J. Reginald SMITH, C.B. Coats, and Hal Halford, Appellees,

v.

Charles L. RODGERS and William O. Plyler, Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

May 7, 1984.

Application for Permission to Appeal Denied Aug. 27, 1984.

W. Stanworth Harris, Jackson, for appellees.

Henry M. Beaty, Jr., Memphis, for appellants.

CRAWFORD, Judge.

Defendants, Charles L. Rodgers and William O. Plyler, appeal from the order of the Chancery Court requiring them to remove dirt from the property of plaintiffs, J. Reginald Smith, C.B. Coats and Hal Halford.

Plaintiffs, in their complaint filed on December 6, 1979, alleged that they conveyed to defendants in May, 1976, a part of a parcel of property in Jackson, Tennessee, that the defendants constructed a Wendy's restaurant thereon, and that in 1978 defendants were having erosion problems which resulted in defendants allowing dirt to collect on plaintiffs' land while defendants shored up their property to prevent further erosion. Defendants in the answer admitted that they had the erosion problem and they had engineer's recommendations for the correction thereof. Defendants deny the encroachment and in the alternative aver that if an encroachment occurred, it improved the value of plaintiffs' property. Defendants also deny they damaged the topography of plaintiffs' property. The answer was filed January 10, 1980, and on June 4, 1982, an order was entered by the court dismissing the case for lack of prosecution. On motion of plaintiffs the case was reinstated by order entered June 21, 1982. The case was heard on April 22, 1983, and the record reflects the following testimony:

J. Reginald Smith testified that he is one of the plaintiff-owners as alleged in the complaint, that they had transferred the property to defendants and retained an adjacent lot on the eastern part with approximate dimensions of 100 × 150 feet, that defendants built a Wendy's restaurant on the property they had acquired from plaintiffs, and that right after they built the Wendy's restaurant the drive began to slough off and it appeared they had a serious problem. As part of the solution for their problem, defendants had the land filled which resulted in dirt on the plain-

tiffs' land. This fill was done "early on" after the restaurant was built, maybe a year to two years after the restaurant was built. He testified defendants had no permission to put the dirt on the property and were requested to remove it. Because of the extra dirt, the plaintiffs' property has a steeper grade or slope than it had before.

On cross examination, Mr. Smith testified that the plaintiff, Halford, had a business relationship with the defendants, that the three plaintiffs acquired the property on the same date that they conveyed part of the property to the defendants, and that they acquired the property for $80,000 and sold a part of the same property to the defendants for $100,000. He further testified that he knew defendants filled the land at the time they built the restaurant, however, he did not give any permission to the contractor to slope the fill on the plaintiffs' land. He told the defendants, "Take the dirt off the land or buy the land from us, one or the two; that is all we want."

Robert Martin testified that he is a surveyor and Executive Vice President of Gregory—Grace & Associates and that they surveyed the property to determine the slope line and by means of the survey established that dirt from the Wendy's property encroaches on the plaintiffs' property 24 feet on the south to 43 feet on the north. The defendants' property is approximately six feet higher than plaintiffs' property and a gradual and constant slope that alleviates this difference now exists on the plaintiffs' property. An old road that is approximately three or four feet below the natural ground level runs through plaintiffs' property and would have to be filled in order for plaintiffs' property to be level.

Arthur Armstrong testified that he is employed with Construction Materials Lab as a lab technician and that he was hired to make soil boring holes to locate top soil on the plaintiffs' property. At three different boring sites top soil was located at the varying depths of four feet, 5.5 feet and 7.5 feet, and these measurements generally indicate the depth of the fill.

Plaintiff, E.T. Halford, was called as a witness by the defendants. He testified he was a realtor and located appropriate properties for the defendants to place Wendy's restaurants. He located the piece of property in this lawsuit and stated that it was the, "last piece of property on Highland Avenue that could be developed into a fast-food outlet, and in 1977 that was one of the hottest markets in the country, fast-food outlets." He then acquired the piece of property with his co-plaintiffs and when he sold it to the defendants, he knew a Wendy's restaurant would be erected thereon. He didn't know defendants were going to fill his property, and he denies ever talking to anyone on behalf of the defendants concerning fill or dirt on his property.

Preston Davis testified that he is a contractor, that he performed the contracting work on the Wendy's restaurant, and that he was also called about the later problem of the parking lot sloughing off. The dirt that is encroaching on the plaintiffs' land represents part of the fill that the defendants initially undertook before construction of the restaurant was ever begun. A catch basin and down pipe were placed on the plaintiffs' property to alleviate drainage problems. At the time defendants were prepared to fill the lot and begin construction, plaintiff, Halford was present, and Davis told Halford that some of the fill might go into the ditches on plaintiffs' property. Halford responded that it didn't make any difference to him, that they would probably have to fill the land if it was ever developed, and that his only concern was whether he would have to pay for the dirt. Davis further testified that no one complained about the original fill during the construction. None of the work that corrected the sloughing problem encroached any farther on plaintiffs' property than the original fill had. Also no one ever complained about this corrective sloping work while it was accomplished.

The chancellor made no findings of fact, but by letter advised counsel for the parties as follows:

After due consideration of the evidence in the above-styled cause, and also the matter of Spragins, et al vs. Rogers, et al, R.D. No. 28601, the Court is of the opinion that the issues are basically the same and that the defendant has encroached upon the property of the plaintiffs, and that the defendants are ordered to remove the dirt and other filling material from the plaintiff's [sic] land.

The Spragins case referred to by the chancellor is not in the record, and the transcript reflects that no evidence was introduced concerning this case. It is unclear how similar issues in another case could have a controlling effect on the decision in this particular case. Neither estoppel nor res judicata was advanced by anyone in the lawsuit, and therefore the action of the court, in relying upon the previous case in this manner, is erroneous. Without findings of fact we are unable to determine the extent of the court's reliance on the previous case as opposed to the evidence introduced at trial.

Our review of the transcript indicates that plaintiffs were uncertain when the defendants encroached on their property. On the other hand, the contractor employed by defendants to construct the Wendy's restaurant testified that the dirt about which plaintiffs complain was placed on the plaintiffs' property at the time of the construction of the Wendy's restaurant. Also, after the erosion problems became apparent, the slope on the plaintiffs' land was merely repaired and, no additional dirt was placed on plaintiffs' property. This testimony was not refuted by plaintiffs. It should also be noted that plaintiffs filed as an appendix to their brief a copy of the decree in the Spragins case which indicates it was entered by the court August 29, 1977, and concerned an earth fill on the defendants' property that affected the property south of the defendants' property. While this decree possesses no evidentiary value, it is an assertion by the plaintiffs and fortifies our view of the evidence that the encroachment on the plaintiffs' land occurred during the initial construction of the Wendy's restaurant and therefore sometime between May, 1976, and early 1977. As noted, this suit for injunction was filed December 6, 1979, and consequently a considerable length of time elapsed between the encroachment and the filing of this action.

■ It is a general rule that a mandatory injunction will not be granted except in extreme cases and when courts of law are unable to afford adequate redress, or when the injuries complained of cannot be compensated in damages. *Morrison v. Jones*, 58 Tenn.App. 333, 430 S.W.2d 668 (1968).

■ The record in the case before us reflects that defendants acquired their property from plaintiffs, that plaintiffs were aware of defendants' intended use of the property, and that the topography of the property would require considerable fill. The fill placed upon the defendants' property needed something to retain it, and this requirement was satisfied by a bank of dirt which encroached on plaintiffs' property. The encroachment occurred during the time of the construction of the Wendy's restaurant between May, 1976, and early 1977. Plaintiffs did not file suit to remove the encroachment until December, 1979, and the matter was not brought to trial until 1983. The record further reflects that plaintiffs' remaining lot was rather small, the topography of the lot indicates a depression in the form of a gulley or old road bed, and the land generally lies considerably lower than the surrounding land. It is also significant to note that the trial court questioned the motive of plaintiffs as to what good it would do to require the removal of this dirt, and counsel for the plaintiffs responded:

> Your Honor, from a practical standpoint it might not necessarily do any good and it may cause the defendant some detriment. It is actually going to cause them some expense to come up with some other means of protecting their property but I don't think that necessarily that that is the case here, Your Honor.

Couple this response with the fact that plaintiff Smith testified that plaintiffs told the defendants, "Take the dirt off the land

or buy the land from us, one or the two; that is all we want," and we perceive what could be termed questionable motivation on the part of plaintiffs by seeking this extraordinary relief from a court of equity. It also appears that plaintiffs did not promptly act to seek relief and this equitable remedy of mandatory injunction must be applied for with reasonable promptness. *Brandon v. Stover,* 60 Tenn.App. 417, 447 S.W.2d 374 (1969); *Morrison v. Jones, supra.*

Judge Puryear in *Morrison v. Jones, supra,* considering the order of the trial court for mandatory injunction said:

> In our opinion, the facts of the case make it necessary for us to exercise our discretion, in reviewing this case de novo, by denying the complainants the right to a mandatory injunction compelling the defendants to remove that portion of their building which encroaches upon complainant's land, and instead, order a recovery of damages in favor of complaints and against defendants.

*Id.* 430 S.W.2d at 677.

On the whole record before us, we do not feel the extraordinary relief of mandatory injunction is required. We, like Judge Puryear and his colleagues in *Morrison,* are of the opinion that the facts of this case make it necessary for us to exercise our discretion in reviewing this case de novo by denying to the plaintiffs the right to a mandatory injunction compelling the defendants to remove the dirt which encroaches upon a part of plaintiffs' lot, and instead order a recovery of damages in favor of the plaintiffs against the defendants. Accordingly, we reverse the judgment of the trial court ordering mandatory injunction and remand this case to the trial court for further proceedings to determine the amount of damages, if any, due plaintiffs from defendants by reason of the dirt encroachment on plaintiffs' land. The costs of the appeal are adjudged against the plaintiffs-appellees.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.