GRANBERRY *v.* JONES *et al.*

(*Nashville*, December Term, 1948.)

Opinion filed January 17, 1949.

Roy L. Mitchell, of Tullahoma, for appellants.

Warden & Warden, of Manchester, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

Granberry, appellee here, and Miss Jones, appellant here, each owned a residence on adjoining lots in Tullahoma. Due to the narrow frontage, Granberry's residence is a little less than five and one-half feet from the boundary line between the two properties. Miss Jones planted an evergreen shrubbery hedge entirely on her side and within a few inches of this boundary line. This hedge has grown to a height of about twenty feet and its branches and foliage have grown over the boundary line and over Granberry's property to such an extent as

to rest against that side of Granberry's residence and there enter the windows of this residence when they are open.

Granberry filed this bill seeking to permanently enjoin Miss Jones and her brother, as agent, from permitting this hedge to protrude over or upon his property, and for a decree requiring her to move the hedge entirely or, in the alternative, cut it down to a height of not more than twenty-four inches and to keep it that way, and for damages. Complainant was granted, upon his prayer, a temporary injunction from interference in cutting so much of the foliage and branches as hang over his lot.

The defendants, Miss Jones and brother, demurred to this bill on the grounds that (1) the defendant had the legal right to grow this shrubbery on her own property to any height she desired, and (2) if any of the branches or foliage thereof protruded over complainant's land, his remedy was only to protect himself therefrom by cutting such hedge to the extent of the protrusion, and (3) the damage alleged to have been inflicted and for which the injunction and damages are sought are shown by the face of the bill to have been caused by the failure of Granberry over a long period of time to exercise his right to cut these overhanging branches and foliage; that is, acquiescence and laches. The Chancellor overruled the demurrer and allowed this appeal.

In addition to the allegations hereinabove stated as facts, the bill alleged that these overhanging branches and foliage had caused the outside wall of complainant's home "to rapidly commence to rot and decay" and the sills and woodwork have been caused to rot to such an extent that they will have to be replaced by reason of the constant leaning against them of this hedge "unless the

nuisance of said hedge is soon abated'', and that this hedge destroys the view from these windows and deprives that side of complainant's residence of air and light, and the ground on that side of the house is always soggy, even in extreme dry periods, thereby furnishing sanctuary for insects, and otherwise menacing health, and has caused a plank fence of complainant to rot to such an extent as to necessitate a new one; that by reason of these conditions the house is not rented and its rental value has been substantially reduced.

Necessarily implied within the allegations just recited is a statement that the complainant has permitted this intrusion for a very long period of time, as it would require such period for overhanging shrubbery to put the property in the physical condition alleged. There is no allegation that the defendant was ever notified of this condition, or requested to correct it. There is an allegation that if the complainant undertook to correct the situation it probably would result in a breach of peace. No experience or other facts are alleged to support this conclusion. Being only a conclusion, it cannot be treated as an allegation of fact in testing this demurrer. On the other hand, the demurrer concedes the right of complainant to cut the branches and foliage in so far as they hang over his property.

We find no Tennessee case where resort to a Court of equity has been attempted on the facts alleged by this bill.

In so far as the bill alleges a deprivation of air and light by reason of the height of this shrubbery, or seeks an order to cause its removal or limit its height, the bill is without equity. Every owner of land has dominion of the soil, and above and below to any extent he

may choose to occupy it with some exceptions not pertinent here. *Humes* v. *Mayor of Knoxville,* 20 Tenn. 403, 407, 34 Am. Dec. 657; *Burton* v. *City of Chattanooga,* 75 Tenn. 739, 741. As held in *Bliss* v. *Ball,* 99 Mass. 597, 598, ''as against adjoining proprietors, the owner of a lot may plant shade trees upon it, or cover it with a thick forest, and the injury done to them by the mere shade of the trees is *damnum absque injuria''.*

■■ There can be no question but that this appellee had the legal right to cut any branches or foliage which to any extent hung over his soil from the hedge growing upon the adjoining land. The demurrer so concedes. Having this right, there is presented the question here as to whether without an attempt to exercise it over a long period of time complainant may resort to a Court of equity to procure by its aid that which he could have procured, in so far as the allegations of the bill disclose, without resorting to equity. It is stated by the text in 1 American Jurisprudence, 539, that ''it has been held that no landowner has a cause of action from the mere fact that the branches of an innoxious tree, belonging to an adjoining land owner, overhang his premises, his right to cut off the overhanging branches being considered a sufficient remedy.'' This seems to be the common law rule. *Michalson* v. *Nutting,* 275 Mass. 232, 175 N. E. 490, 76 A. L. R. 1109; *Smith* v. *Holt,* 174 Va. 213, 5 S. E. (2d) 492, 128 A. L. R. 1217. The *Massachusetts Case, supra,* quoting from a Vermont case, *Skinner* v. *Wilder,* 38 Vt. 115, 88 Am. Dec. 645, explains the reason for the rule as follows:—''His remedy is in his own hands. The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to

use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious." [275 Mass. 232, 175 N. E. 491.]

The *Massachusetts Case, supra,* gave what seems to be the common sense view of the expression "used his property in a reasonable way" by this statement:—"The principle involved is that an owner of land is at liberty to use his land, and all of it, to grow trees. Their growth naturally and reasonably will be accompanied by the extension of boughs and the penetration of roots over and into adjoining property of others." And, of course, we are not dealing here with a noxious plant. Its most objectionable characteristic to the appellee is that it grows fast.

There is left for consideration the effect upon this case of the modification, if any, of the above stated common law rule by our statute, code section 9314, providing that in suits for damages resulting from a nuisance and a finding to that effect the Court may hear proof as to "how the alleged nuisance is caused or originated", Code, 9315, and within its discretion abate the same.

The bill discloses that the nuisance and damages alleged here were caused by the growth of the branches and foliage of this hedge over the land of complainant for a time so long that it reached the house of complainant and there remained so long unmolested by this complainant in ever thickening growth as to rot parts of the house and fence and leave the ground soggy even in extremely dry periods. No complaint or notice through this necessarily long period of time appears to have been given the defendants.

■ The situation just described suggests the thought that perhaps counsel in filing this bill and the Chancellor in sustaining it overlooked the well established and active rule that "equity requires a party to assert his rights in a reasonable time after he discovers that he has been wronged". 3d Edition of Gibson, Section 49. That rule has frequently been applied in considering the application of the statute mentioned and the bill dismissed. See *Weidner* v. *Friedman* and the cases there cited, 126 Tenn. 677, 685, 151 S. W. 56, 42 L. R. A. (N. S.), 1041. It is compellingly applicable here. The long acquiescence and laches upon the part of the complainant without any notice to defendant and with no attempt to aid himself is clearly the cause of the damage for which he seeks equitable relief. Of course, the Courts are open to Granberry if in legally aiding himself he is improperly interfered with by Miss Jones or her brother. Our conclusion, also, is without prejudice to whatever rights, if any, Granberry may have for recovery of the expense to which he may be put now or hereafter in cutting the overhanging branches or foliage.

The decree of the Chancellor is reversed and the bill dismissed, with all costs adjudged against the appellee, Rucker E. Granberry, and his sureties.

All concur.