Lawrence L. CROSS, Jr. and Judy A. Cross, Plaintiffs–Appellees,

v.

Thomas Douglas McCURRY and Virginia Louise Duncan McCurry, Defendants–Appellees,

and

Herbert Hoover Hobbs, Defendant–Cross Complainant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

May 5, 1993.

Permission to Appeal Denied by Supreme Court Aug. 2, 1993.

Russell W. Adkins with Wilson, Worley, Gamble & Ward, Kingsport, for appellant.

Richard A. Tate, Blountville, for appellees Lawrence L. Cross, Jr., and Judy A. Cross.

Patrick Ledford and Laura T. Kidwell with Moore, Stout, Waddell & Ledford, for appellees Thomas Douglas McCurry and Virginia Louise Duncan McCurry.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Defendant, Hobbs, has appealed from a chancery decree fixing compensatory damages but denying punitive damages for Plaintiffs' building encroaching on Defendant's property and ordering Defendant to execute a quitclaim deed to Plaintiffs for the property involved.

In 1983, Defendant–Appellant Herbert Hoover Hobbs (Hobbs) conveyed a five-acre tract of land located in the 13th Civil District of Sullivan County to Defendants–

Appellees Thomas McCurry and wife, Virginia McCurry (the McCurrys). The five-acre tract almost completely surrounded a one-acre tract which the McCurrys already owned. The five-acre tract also adjoined a 32-acre tract which Hobbs owned. The northerly boundary line of the five-acre tract adjoined the southerly boundary line of the 32-acre tract which Hobbs still owned. As pertinent to this litigation, a strip of the five-acre tract, which was approximately 212 feet long and 63 feet wide, lay between the southerly boundary line of Hobbs's 32-acre tract and the northerly boundary line of the one-acre tract which the McCurrys owned prior to their purchase of the five-acre tract from Hobbs. Also pertinent is the fact that a barbed wire fence which was on the Hobbs property was located eight feet to the north of the boundary line of the five-acre tract sold to the McCurrys and Hobbs's 32-acre tract.

In 1984 Mr. McCurry decided to construct a building on the strip of land which lay between his original one-acre tract and Hobbs's 32-acre tract. Apparently unaware the fence was eight feet from the boundary line between the two properties and assuming it was on the boundary line, Mr. McCurry constructed the northerly side of the building four feet eight inches (4'8") over on the Hobbs property. In the process of construction, Mr. McCurry's workmen damaged Mr. Hobbs's fence which was adjacent to the building. Mr. McCurry rebuilt the fence with a combination of boards and barbed wire. In the process he also closed a gap in the fence which Mr. Hobbs used to access his property from a roadway which ran along the west side of the McCurry property.

In 1988 the McCurrys sold their property to the Plaintiffs–Appellees Lawrence Cross and wife, Judy Cross (the Crosses). The Crosses were unaware of the encroachment of their building on the Hobbs property until March, 1990, when Mr. Hobbs informed them their building was partially on his property. Shortly after Mr. Hobbs told the Crosses their building encroached on his property, they had the property surveyed, which verified that the north side of their building was four feet eight inches

(4'8") over the boundary line on Mr. Hobbs's property and the fence was eight feet north of the boundary line.

The Crosses then filed suit against Mr. Hobbs and the McCurrys in October, 1990. Their complaint alleged the McCurrys and Hobbs knew or should have known an encroachment existed, and the market value of the Crosses' property was diminished as a result of the encroachment. They alleged the McCurrys had misrepresented the location of the northern boundary of the 5.2–acre tract. They alleged Mr. Hobbs had knowledge of the encroachment and had failed to take timely and appropriate measures to correct the situation. The Crosses asked that the existing fence be declared the boundary line or, in the alternative, the McCurrys be ordered to pay appropriate damages, or Mr. Hobbs be barred by the statute of limitations or by laches from requiring them to relocate or remove the building from his property.

Mr. Hobbs, for answer, said the Crosses knew or should have known the location of the true boundary lines of their property and he had personally alerted Mr. McCurry to the encroachment at the time of the construction of the building. He likewise averred that the market value of his property had decreased as a result of the encroachment. Mr. Hobbs subsequently filed a counterclaim and cross claim against the Crosses and the McCurrys, alleging, among other things, that the McCurrys acted willfully or wantonly in their construction of the building. He prayed for a declaration that the true boundary line between the two tracts is as described in the deed from him to the McCurrys, and not the fence line. He asked for an injunction requiring the removal of the building and for compensatory damages for the unlawful possession of his property as well as for the destruction of the fence and trees on the property. He also asked for punitive damages against the McCurrys.

For answer, the McCurrys conceded they were of the opinion the existing fence represented the northern property line of the 5.2–acre tract but they denied ever having related this fact to the Crosses. They also

denied Mr. Hobbs ever informed them of the encroachment. The McCurrys also alleged Mr. Hobbs's action was barred by the statute of limitations.

Following the trial, the court found the structure built by the McCurrys encroached on Mr. Hobbs's property but its construction was not willful or reckless and an injunction for its removal was not the appropriate remedy. He declared the existing fence should be the new boundary line between the Crosses' and Hobbs's properties. He ordered Mr. Hobbs to execute a quitclaim deed conveying the strip of land between the fence and the boundary line of the properties to the Crosses. The McCurrys were ordered to pay Mr. Hobbs $200 as compensation for the property. He also ordered McCurrys to construct a metal gate in the fence at the end of the road lying west of the Crosses' property for entry to the Hobbs property. He ordered the McCurrys to pay the attorneys' fees incurred by the Crosses and to pay the cost of the cause.

Mr. Hobbs has appealed, presenting the following issues for review: (A) whether or not the chancellor had the constitutional authority to order Mr. Hobbs, against his will, to convey his land to the Crosses; (B) whether or not $200 was adequate compensation for his land; and (C) whether or not the court was in error in finding the McCurrys did not act recklessly.

The Appellees, McCurrys, have also presented the following issues for review: (A) whether or not T.C.A. § 28-3-105 bars the claims of both Mr. Hobbs and the Crosses relating to the encroaching building and (B) whether the lower court erred in ordering them to pay the attorneys' fees incurred by the Crosses.

Since the McCurrys present the issue of the applicable statute of limitations which would affect the claims of both the Crosses and Mr. Hobbs, we consider that issue first. The McCurrys insist T.C.A. § 28-3-105, the three-year statute of limitations for injuries to real property, is applicable here. We cannot agree and hold the applicable statute of limitations is T.C.A. § 28-2-103 which applies in cases of adverse possession without color of title. The statute, as pertinent here, provides:

28-2-103. Seven year period runs from the time of right accrued—Extent of possession.—(a) No person or anyone claiming under him shall have any action, either at law or in equity, for the recovery of any lands, tenements, or hereditaments, but within seven (7) years after the right of action accrued.

In *Shearer v. Vandergriff,* 661 S.W.2d 680 (Tenn.1983) the supreme court, in addressing the applicable statute of limitations in adverse possession cases, said, at 682:

T.C.A. § 28-2-101 and T.C.A. § 28-2-102 protects [sic] persons who are holding adversely under a color of title from suits to oust them from the entire boundary of lands on which they are adversely holding a portion, and T.C.A. § 28-2-103 protects an adverse holder without color of title only to that portion of land which is being held adversely. *Peoples v. Hagaman,* 31 Tenn.App. 398, 215 S.W.2d 827 (1948).

The record shows Mr. McCurry was under the impression the fence was on the property line. As a result of his mistaken belief, Mr. McCurry did two things—he constructed his building some four feet across the property line upon Mr. Hobbs's property, and he destroyed a portion of Mr. Hobbs's barbed wire fence and replaced it with a board and barbed wire fence, at the same time eliminating a gap in the previous fence line and thus enclosing part of the strip of land in question. Either of these acts would serve to classify Mr. McCurry, and Mr. Cross after him, as adverse holders of Mr. Hobbs's property.

In the case of *Peoples v. Hagaman,* 31 Tenn.App. 398, 215 S.W.2d 827 (1948) this court, in addressing the operation of the statute, said, at 829, 215 S.W.2d 827.

The rule is that where a purchaser of land accidentally or by mistake encloses a contiguous strip, believing he is placing the fence on the boundary, and holds the enclosed strip for seven years, his possession is adverse, and will avail against the true owner.... As the chancellor

held, the construction of a garage ... [is] at least as effective in giving notice to the true owner of an adverse use of his property as the construction of a fence.

■ In addition to T.C.A. § 28–2–103, there is another statute of limitations which comes into play in the circumstances before us. T.C.A. § 28–1–114 reads in part:

28–1–114. Counterclaim or third party complaint—Limitation of action.—(a) A counterclaim or third party complaint is not barred by the applicable statute of limitations if it was not barred at the time the claims asserted in the complaint were interposed.

The record shows the construction of the encroaching building began in the spring of 1984 and was completed before the end of the year. This suit was begun with the filing of the Crosses' complaint in October, 1990. Mr. Hobbs did not file his counter complaint and cross claim until April, 1992, but he is given the benefit of the Crosses' October, 1990, filing pursuant to T.C.A. § 28–1–114. Mr. Hobbs's claims are, therefore, not barred by T.C.A. § 28–2–103, although they were asserted outside of the applicable seven-year period within the statute.

■ The McCurrys' second issue is: "Whether the trial court erred in ordering the McCurrys to pay the attorney fees incurred by the Crosses." There was no prayer for attorneys' fees in the Crosses' complaint, nor did they introduce any evidence on the subject. The McCurrys insist attorneys' fees are deemed to be special damages and they therefore must be specially pleaded pursuant to Rule 9.07, T.R.C.P. We agree. In *Marshall v. First Nat'l Bank of Lewisburg*, 622 S.W.2d 558 (Tenn.App.1981) this court stated, at 561:

Attorney's fees are special in Tennessee because the general rule is that in the absence of a contract, statute, or recognized ground of equity so providing there is no right to have attorney's fees paid by an opposing party in civil litigation. *State v. Thomas*, 585 S.W.2d 606 (Tenn.1979). Since an award of attorney's fees is fairly unusual, plaintiff

should have the obligation of specially pleading such an item of damages.

We accordingly hold the order of the chancellor directing the McCurrys to pay the attorneys' fees incurred by the Crosses to be inappropriate in the case at bar.

■ This brings us to the issues presented by Mr. Hobbs. He first says the court was in error in directing him to execute a deed, against his will, to the Crosses for the land lying between the fence and the boundary line between his 32–acre tract and the Crosses' property.

The proof shows there were 1,942 square feet of land in the total strip. Of this amount, the building encroached on approximately 481 square feet. The Appellees have cited us to no authority, nor have we found any, which would support a holding that the court has authority under circumstances akin to those in the case at bar to require an individual, against his will, to convey his property to a third party. Generally, "while the courts have not been in agreement on the precise meaning of the term 'public use,' it has generally been held that the state does not have power to authorize the taking of the property of an individual without his consent for the private use of another, even on the payment of full compensation." 26 Am.Jur.2d Eminent Domain, § 25, p. 669.

In the case of *Alfred Phosphate Co. v. Duck River Phosphate Co.*, 120 Tenn. 260, 113 S.W. 410 (1907) our supreme court said, at 269:

The constitution of the State of Tennessee provides:

"Article 1, sec. 21. That no man's particular services shall be demanded or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

This provision of the constitution has been frequently interpreted by this court to prohibit the taking of private property for a private use.

In the case of *Stratton Claimants v. Morris Claimants*, 89 Tenn. 497, 15 S.W. 87 (1890) our supreme court, in addressing

the constitutionality of a statute depriving one of rights in his property, said, at 535–36, 15 S.W. 87:

> The property of an individual may be taken by summary proceedings for the payment of his taxes, or by judicial proceedings to compel the performance of his contracts, or to recover damages for the breach of his contracts, or for torts committed by him, or it may be taken as punishment for his crimes. But the property of an individual cannot be taken under that section [Article I, Section 8, Tennessee Constitution], or any other section of the Constitution, when it is taken from him *merely to "give" it to another.* (Emphasis original.)

■ We hold the court was without authority to order Mr. Hobbs to execute a deed to the Crosses for the property involved. We hold, however, the court properly declined to grant a mandatory injunction and properly ordered the McCurrys to pay Mr. Hobbs damages resulting from the encroachment on his property.

We think the holding in the case of *Morrison v. Jones,* 58 Tenn.App. 333, 430 S.W.2d 668 (1968) is controlling here. There suit was originally brought by the property owners, Mr. and Mrs. Jones, seeking a mandatory injunction requiring the respondents to remove a building which encroached on their land. The chancellor found the building was, in fact, an encroachment, and granted the mandatory injunction, apparently because he was of the opinion he had no right to refuse. 430 S.W.2d at 673. The court of appeals agreed there was an encroachment but reversed the chancellor and held an award of damages was the appropriate equitable relief in the case. The opinion indicated the measure of damages would be the diminution in value of the property encroached upon, in effect allowing the encroachment to remain as an easement but requiring damages to be paid. In *Morrison, supra,* the court said, at 673:

> It is the general rule that the equitable remedy of injunction is not a matter of right, but is exercised only in the sound discretion of the Chancellor.... It is

also the general rule that a mandatory injunction will not be granted except in extreme cases and when courts of law are unable to afford adequate redress, or when the injuries complained of cannot be compensated in damages. (citing *Spencer v. O'Brien,* 158 S.W.2d 445 (Tenn.App.1941) and *Post v. Southern Railway Co.,* 103 Tenn. 184, 52 S.W. 301 (1899)).

■ The second issue presented for review by Mr. Hobbs concerns the adequacy of the $200 award granted by the court as compensation for the loss of his property.

Since the portion of the chancellor's award requiring him to convey title to the land is being modified, it is no longer necessary to compensate him for that loss. As noted above, however, Mr. Hobbs is entitled to damages resulting from the encroachment pursuant to *Morrison, supra.* The $200 award granted by the chancellor is consistent with the testimony of Mr. Jud Brownell, a real estate appraiser who gave the land in question a value of $0.11 per square foot. The appraiser also testified there would be no damage to the remainder of Mr. Hobbs's property if the strip were removed from the 32.2–acre tract. Mr. Brownell fixed the value of the land encroached upon at $53. Under the circumstances in this case, however, we think the award of $200 should not be disturbed.

In fashioning this award, we think it also significant that the encroaching building was constructed in 1984, some six years prior to the beginning of this litigation. The record clearly demonstrates Mr. Hobbs was aware of the encroachment at the time of construction yet he failed to protest until 1990. In addressing this issue, the *Morrison* court quoted with approval as follows: "Equity requires a party to assert his rights in a reasonable time after he discovers that he has been wronged." *Granberry v. Jones* (1949) 188 Tenn. 51, 216 S.W.2d 721.

■ Mr. Hobbs's final issue is: "Whether the evidence preponderates against the trial court's finding that the McCurrys did not act recklessly."

The record shows Mr. Hobbs was in possession of an unrecorded survey which is referred to in the deed from him to the McCurrys and which clearly shows the property line is outside the fence line. Mr. McCurry testified he never saw the survey. He testified he had been maintaining the land up to the fence line prior to purchasing the 5.2–acre tract from Hobbs and he believed he was purchasing to that point. He further testified Mr. Hobbs never alerted him to the encroachment at the time of its construction and Hobbs made no comment when he overheard McCurry tell a potential purchaser that the property line was "down around the fence there."

Appellant states in his brief: "The court held that Mr. Hobbs is not entitled to punitive damages against the McCurrys because the McCurrys did not act willfully or recklessly." The record does not support this statement. The chancellor did not file a memorandum opinion nor did he make a finding of fact. At the conclusion of the trial, he made a conclusionary statement as to what he was holding relating to the liability of the parties. The chancellor did not address the issue of punitive damages. The judgment which was entered making final the holding of the chancellor stated: "... [T]his construction was not willful or reckless and therefore the court will not issue a mandatory injunction requiring this detached structure to be removed from Hobbs' property." But this was not an excerpt from the chancellor's holding in the case.

For whatever reason, the chancellor did not award punitive damages. We fail to find it was reversible error in the case at bar. The landmark case on this issue in this jurisdiction is *Lichter v. Fulcher*, 22 Tenn.App. 670, 125 S.W.2d 501 (1938). In addressing the issue of the discretion of the chancellor to not award punitive damages, the court stated:

> Where the case is tried before the Chancellor it is obvious that it is peculiarly within the discretion of the Chancellor as to how much, if any, punitive damages should be allowed. It is a matter of discretion which will not be interfered with by this court. We know of no fixed rule which could guide this or any other court in fixing the amount of exemplary damages to be awarded. And we know of no reason why we should substitute our judgment for the judgment of the Chancellor in this respect. The fact that we have the latter say in the matter offers no reason for altering the decree entered, and we are not inclined to do so. (Citations omitted.)

22 Tenn.App. at 680, 125 S.W.2d 501. *Also see Bryson v. Bramlett*, 204 Tenn. 347, 321 S.W.2d 555 (1959) and *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (Tenn.1977).

The decree of the chancellor will be modified to leave the original boundary line intact and to delete the requirement that Mr. Hobbs execute a quitclaim deed to the property lying between the fence and the divisional line between his property and the Crosses' property. It will also delete the requirement that the McCurrys pay the Crosses' attorneys' fees. To the extent the decree is not modified, it is affirmed. The case will be remanded to the trial court for the entry of a decree in keeping with this opinion. In our discretion, the cost of this appeal is taxed to the McCurrys.

FRANKS and LEWIS, JJ., concur.